UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)
www.flsb.uscourts.gov

In re:                                                    Case No. 09-19921 BKC-RAM
                                                          Chapter 11 Case

Psystar Corporation,

     Debtor.

_____/

## MOTION BY APPLE INC. FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)

       Pursuant to 11 U.S.C. § 362(d)(1), Apple Inc. ("Apple")  moves this Court for an order modifying the automatic stay imposed by these bankruptcy proceedings so that the case of *Apple Inc. v. Psystar Corporation*, Case No. CV 08-03251 WHA, which is currently pending in the Northern District of California and to which Debtor is a party, may proceed to trial and judgment as previously planned.

## MEMORANDUM IN SUPPORT

       Apple, by and through its undersigned counsel, hereby requests that this Court enter an order granting Apple relief from the automatic stay pursuant to Section 362(d)(1) of the United States Bankruptcy Code (the "Code") to permit a pending action alleging copyright infringement, trademark infringement, breach of contract, and state law unfair competition to proceed in the United States District Court for the Northern District of California (the "District Court").  As demonstrated below, cause exists under the broad approach contemplated by the Bankruptcy Code to permit both Apple and the Debtor to proceed with and conclude the litigation that is approaching trial before the District Court.  Moreover, prompt resolution of the pending lawsuit is essential to a determination of whether the Debtor ever will be able to present to this Court a confirmable plan of reorganization.

- 1 -

I.    <u>JURISDICTION</u>

This Court has jurisdiction to decide this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(G).  Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.  The relief requested in this Motion is predicated on 11 U.S.C. § 362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

II.    <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

On May 21, 2009, Psystar Corporation ("Psystar" or "Debtor") filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the Code.  Psystar continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107 and 1108.  When Psystar commenced this proceeding, the fact discovery deadline was only weeks away and the trial date was quickly approaching in the copyright, trademark, breach of contract and unfair competition litigation before the District Court encaptioned *Apple Inc. v. Psystar Corporation*, Case No. CV 08-03251 WHA (Alsup, J.) (the "Infringement Action").  As described below, the Infringement Action involves issues critical to both Apple and the Debtor, and it is important that the automatic stay be lifted now to permit that matter to proceed to trial.  Thus, the granting of the relief sought by this Motion will promote judicial economy and conserve the resources of all parties by allowing prompt resolution of the matters pending before the District Court.

A.    <u>Description of the Infringement Action</u>[1]

Apple is one of the world's most innovative companies in developing, manufacturing and marketing consumer products and services.  Apple's products include the

---

[1] The following description is based on the record of the Infringement Action.  The complete docket of the Infringement Action is attached as Exhibit A to the Declaration of Mehrnaz Boroumand Smith ("Boroumand Smith Declaration").  The Boroumand Smith Declaration is attached to this Motion as Exhibit 1.

Mac® line of desktop and portable computers, famous for their reliability, ease-of-use and innovative industrial design. Apple's most recent operating system for its Mac computers – Mac OS® X – was launched in 2001, and the most recent version of Mac OS X (version 10.5) is known as Mac OS X Leopard®. Apple's development teams have seamlessly designed the operating system and the Apple® hardware on which it runs such that the use of the computers is intuitive, efficient and fun. As a result, a Mac is simpler to use, service, update and maintain.

All Apple computers are sold to customers with Mac OS X Leopard preloaded. To enable Mac owners to upgrade their computers to this latest generation of the Mac operating system, Apple also licenses upgrade media (DVDs) containing the software, which can be acquired through Apple or authorized vendors, and then loaded onto the customer's Mac to accomplish the upgrade. Mac OS X Leopard runs only on Apple computers (unless illegally modified) and will not operate on non-Apple computers including "PCs" made by such companies as Dell, IBM, Sony and others.

Apple licenses the use of Mac OS X Leopard, and the intellectual property associated with it, through its Software License Agreement for Mac OS X Leopard. The Software License Agreement is a limited use license which allows the licensee to "install, use and run one (1) copy of the Apple Software on a single Apple-labeled computer at a time." The license further states that the licensee "agree[s] not to install, use or run the Apple Software on any non-Apple labeled computer or enable another to do so…." Furthermore, the license agreement states that it will automatically terminate if the licensee "fail[s] to comply with any term(s) of [the] License."

In contravention of Apple's Software License Agreement and its intellectual property rights, Psystar began manufacturing, marketing and selling non-Apple computers that

- 3 -

use a modified version of Apple's Mac OS X Leopard operating system in April 2008.  Psystar markets and sells its personal computers through a website.  Some of those computers use Microsoft's Windows operating system and some the Linux operating system.  The vast majority of Psystar's sales, however, are of unauthorized "clone" or "knock-off" computers that are designed to run, without permission, a modified version of Apple's proprietary operating system.  Discovery to date in the Infringement Action shows that in excess of 80 percent of Psystar's computer sales volume results from the sale of computers making unauthorized use of Apple's Mac OS X Leopard operating system.  (Boroumand Smith Declaration, ¶ 8.)  Because Psystar is doing this without Apple's permission – indeed, in violation of the terms of the Mac OS X Leopard license – Apple filed the Infringement Action in July, 2008.

In the Infringement Action, Apple contends that, in violation of Apple's copyright and trademark rights and the terms of the Mac OS X Leopard Software License Agreement, Psystar began online sales of a computer named OpenMac running a modified, unauthorized version of Mac OS X Leopard in April 2008.  (*See* Amended Complaint, attached as Exhibit B to the Boroumand Smith Declaration.)  Following its initial launch, Psystar renamed the OpenMac as the Open Computer and also sells a more advanced version of the computer known as the OpenPro.  Like the Open Computer, the OpenPro also runs a modified, unauthorized version of Mac OS X Leopard on non-Apple-labeled hardware.  According to Psystar's Chief Executive Officer, Psystar has sold thousands of these computers (hereinafter the "Psystar Products").[2]

The Amended Complaint, filed December 2, 2008, alleges that in selling the Psystar Products with Apple's proprietary Mac OS X Leopard software, Psystar is breaching and

---

[2] Psystar has subsequently introduced the Open 3, Open Q, and Rackmount OpenPro computers that also are marketed with and utilize modified, unauthorized versions of Mac OS X Leopard.

- 4 -

inducing the breach of Apple's Mac OS X Leopard Software License Agreement.  (*Id.*)  Also, in order to run Mac OS X Leopard on Psystar Products, Psystar has modified and/or copied Apple's proprietary software and is directly and contributorily infringing Apple's copyrights in its Mac OS X Leopard software, and has violated the Digital Millennium Copyright Act ("DMCA") by circumventing the technological protection measures that effectively control access to Apple's copyrighted works.  The Amended Complaint further alleges that Psystar is infringing Apple's registered, unregistered and common law trademarks and non-functional trade dress.  Finally, the Amended Complaint alleges Psystar's actions violate both statutory and common law unfair competition laws.  (*Id.*)

Apple's Amended Complaint seeks a permanent injunction to stop the continuing infringement by Psystar.  The Amended Complaint also seeks actual damages, statutory damages, treble damages and attorneys' fees.

B.     Status of the Infringement Action

Apple has aggressively pursued the Infringement Action, seeking and obtaining an early trial date and proceeding expeditiously to redress Psystar's ongoing violations of Apple's copyright, trademark, statutory and contractual rights.   Since the filing of the Infringement Action on July 3, 2008, the parties have engaged in extensive motion practice and extensive fact discovery.  (*See* Boroumand Smith Declaration, Exhibit A.)  The initial motion practice concerned Psystar's counterclaims under various federal and state antitrust theories. Apple filed its motion to dismiss Psystar's original counterclaims on September 30, 2008; on November 11, 2008, Judge Alsup issued an order granting Apple's motion to dismiss, finding that Psystar could not assert any viable antitrust claim.  (*Id.*)  On December 8, 2008, Psystar moved to file amended counterclaims and on February 6, 2009 Judge Alsup issued an order

allowing Psystar to file some, but not all, of its proposed amended counterclaims.  On February 12, 2009, Psystar filed its First Amended Counterclaim, alleging two counterclaims, limited to declaratory relief regarding alleged copyright misuse.  Psystar's First Amended Counterclaim contains no affirmative claim for damages that could possibly yield any recovery against Apple. (*Id*.; *see* Boroumand Smith Declaration, Exhibit C.)

Meanwhile, the parties have also engaged in extensive fact discovery in the Infringement Action: responding to document requests, interrogatories, requests for admissions and conducting depositions.  (*See* Boroumand Smith Declaration, ¶ 6.)  Indeed, Psystar commenced this bankruptcy case just weeks before the June 26, 2009 close of all fact discovery and the affirmative expert report deadline in the Infringement Action, shortly after the May 8, 2009 granting of Apple's motion to compel additional documents from Psystar, and just prior to a June 4, 2009 scheduled deposition resulting from that motion to compel.  After a brief period for expert discovery, the pre-trial conference was scheduled for October 26, 2009, in advance of the November 9, 2009 trial date.[3]

Since the filing of this case, there is no evidence that Psystar has altered its business model or in any way ceased its infringing conduct.  Its website remains operational and it continues to offer for sale Open Computers running Mac OS X Leopard.  Thus, it appears that Psystar's post-petition operations are identical to its pre-petition conduct in all relevant respects, thus subjecting the Debtor to ongoing claims of infringement.

---

[3] On June 1, 2009 the District Court issued an order staying the Infringement Action "until the automatic stay lifts at which time the parties must immediately notify the Court and arrange for a case management conference."  (*See* Boroumand Smith Declaration, Exhibit D.)

LEGAL_US_W # 61919445.3
2147079-1

With the exception of Psystar itself, all of the critical participants in the Infringement Action are located in Northern California. Apple's counsel in the Infringement Action is located in San Francisco, California. Psystar's counsel of record in the Infringement Action is located in Palo Alto, California. Many fact and expert witnesses in the Infringement Action are located in the Northern District of California.

III.    RELIEF REQUESTED

Apple requests that this Court modify the automatic stay pursuant to Section 362(d)(1) of the Code to allow the Infringement Action to proceed before Judge Alsup so as to permit a final determination of Apple's and Psystar's claims. As requested by Apple, modification of the stay would not permit any act by Apple to collect any judgment against the Debtor other than through the bankruptcy claims process or further order of this Court after notice and a hearing.

IV.    LEGAL STANDARDS

While Apple is fully aware of the protections afforded the Debtor pursuant to the automatic stay, Section 362(d) provides that a bankruptcy court may lift the automatic stay to allow pending litigation to proceed in another forum in circumstances such as those that exist here:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).

The Code does not define "cause" and courts therefore decide motions for relief from stay on a case-by-case basis. *In re Murray Indus., Inc.*, 121 B.R. 635, 637 (Bankr. M.D.

- 7 -

Fla. 1990) (granting motion for relief from stay to allow creditor to sue on unpaid invoices).  The

term "cause" is viewed by courts as a "broad and flexible concept."  *In re The Score Board., Inc.*,

238 B.R. 585, 593 (D. N.J. 1999).  The decision to lift the automatic stay is left to the sound

discretion of the Bankruptcy Court.  *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir.

1989).

      Relief from the stay may be granted for cause when it is necessary to permit

litigation in another forum to be concluded.  *Packerland Packing Co. v. Griffith Brokerage Co.*

(*In re Kemble*), 776 F.2d 802, 807 (9th Cir. 1985); *accord, Busch v. Busch*, 2003 Bankr LEXIS

557, at *8 (B.A.P. 10th Cir. June 6, 2003). "Allowing a matter to proceed to another forum may

constitute 'cause' to lift the stay."  *Murray Indus.*, 121 B.R. at 636.  Indeed, the legislative

history to Section 362(d)(1) expressly supports this conclusion:

> **It will often be more appropriate to permit proceedings to
> continue in their place of origin**, when no great prejudice to the
> bankruptcy estate would result, in order to leave the parties to their
> chosen forum and **to relieve the bankruptcy court from many
> duties that may be handled elsewhere**.

S. Rep. No. 95-989 at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added).

      In the Eleventh Circuit, bankruptcy courts consider the totality of the

circumstances to determine whether cause for relief from the automatic stay exists.  *In re Bryan

Road, LLC*, 382 B.R. 844, 854-55 (Bankr. S.D. Fla. 2008) (granting creditor motion for relief

from automatic stay based on the totality of the circumstances); *In re Laminate Kingdom LLC*,

2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (same).  Relevant considerations

include "balanc[ing] the prejudice to the debtor against the hardship to the moving party if the

stay remains in effect as well as . . . the efficient use of judicial resources, the location of

witnesses, documents, and other necessary parties."  *In re Aloisi*, 261 B.R. 504, 508 (Bankr.

- 8 -

M.D. Fla. 2001).  The bankruptcy court may also consider "whether a creditor has a probability of success on the merits of his case." *Id.*

Most recently, the Middle District of Florida supplemented this balancing test by considering twelve specific factors widely viewed by bankruptcy courts as relevant to determining whether to allow pending litigation to proceed outside of bankruptcy court.   *In re Beane*, --- B.R. ---, 2008 WL 6053198 (M.D. Fla. July 15, 2008) (concluding the bankruptcy court did not err in granting relief from the automatic stay for the purpose allowing a matter to proceed in Tax Court).  These twelve factors included:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) the impact of the stay on the parties and the balance of harms.

*Id.* at *4 (quoting *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

Whether applying the balancing test alone, or in conjunction with analyzing the twelve factors identified in *In re Beane*, courts have widely found the kind of facts and circumstances present in this case to constitute sufficient "cause" for modifying the automatic

stay.  As demonstrated below, bankruptcy courts regularly grant relief from stay to permit the conclusion of pending litigation regarding a debtor's alleged infringement of another's intellectual property rights.

V.    ARGUMENT

    A.    Cause Exists To Lift The Stay And Therefore The Infringement Action Should Be Permitted To Proceed Through Judgment As Planned

        1.    The Balance Of Harms Clearly Supports Granting Relief From The Automatic Stay

Whether applying the balancing test or analyzing the twelve factors from *In re Beane,* bankruptcy courts afford great deference to the balance of the harms.  As applied to the facts presently before the Court, not only will the Debtor suffer little, if any, prejudice should the stay be lifted, but denying the Motion and maintaining the stay will prejudice Apple.  Apple, like all owners of intellectual property, has a strong interest in making sure that its property rights are protected from unauthorized use.  Refusing to grant relief from stay will cause delay in protecting those rights.

Indeed, having these issues resolved before the District Court is essential to the determination of whether the Debtor can successfully reorganize and emerge from Chapter 11. At some point prior to any attempted reorganization, it must be determined whether the Debtor's current business model – selling computers running Apple's proprietary Mac OS X Leopard operating system without permission or authorization from Apple – is a viable business or, instead, unlawful copyright and trademark infringement, and, if the latter, whether an alternative business model would support a successful reorganization.  The Debtor has no legitimate property rights in an infringing product and cannot pursue reorganization of its business affairs based on the sale of products that violates applicable non-bankruptcy law.  As a result, the

- 10 -

Infringement Action must be resolved promptly by a court – either in California or Florida. Since no action is currently pending in this Court, the District Court in California is the most appropriate forum to resolve the dispute between Apple and the Debtor.

A recent case arising in a similar context is instructive.  In *In re The SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del 2007), the Delaware bankruptcy court found cause to grant a creditor's motion for relief from stay so that a copyright infringement action pending in federal district court in Utah could proceed.  The facts in *SCO Group* are similar to the present case. The predecessor to debtor SCO, a software developer, and creditor Novell, Inc., entered into an agreement under which Novell transferred certain software licenses to SCO's predecessor. Later, SCO alleged a claim of copyright infringement against Novell in district court arising out of the agreement, and Novell alleged copyright counterclaims.  On summary judgment, the district judge found that Novell was entitled to copyright royalties from SCO, and left other issues, including the amount of damages, for trial.  *Id.* at 855.  Before the case could be tried, however, SCO filed for bankruptcy.  Novell moved for relief from the automatic stay so that the pre-existing action could proceed as planned in the district court.

Observing that "the automatic stay is not meant to be absolute, and in appropriate instances relief may be granted," the bankruptcy court *granted the request for relief from stay* upon consideration of various factors.  *Id.* at 856.  The *SCO Group* court first weighed the relative trial burdens and concluded that lifting the stay would not cause SCO to suffer undue prejudice because SCO had separate litigation counsel in the pending action who had already prepared extensively for trial, and thus "the trial preparation will not be burdensome to the Debtors."  *Id.* at 858.  The bankruptcy court reasoned that given the parties' ongoing trial preparation, the "longer the trial is delayed, the more burdensome it is to both parties to ready

- 11 -

themselves again." *Id.*  Importantly, the bankruptcy court also recognized the critical importance to the bankruptcy process of first resolving any underlying infringement litigation, finding that, "without a ruling on the Liability Issues [from the district court], Novell's rights in these bankruptcy cases remain undetermined and the value of Novell's claim will remain a troubling issue for the Court, Novell, and Debtors." *Id.* at 859.

Here, like in *SCO Group*, Psystar has separate counsel in the Infringement Action who will litigate that action without the distraction of the proceedings in this Court and who has already participated in all of the fact discovery conducted to date in the Infringement Action. Therefore, Psystar will not be burdened by preparing for trial in the Infringement Action.[4]  To the contrary, Psystar *will* be burdened if the Infringement Action remains stalled, which would only cause its counsel to turn to other clients and matters, and then expend additional time in the future to "ready themselves again." *Id.* at 858.

With regard to the impact on reorganization, this Court cannot approve a reorganization plan for Psystar without a full and final determination of whether Psystar's business infringes Apple's intellectual property rights and breaches or induces the breach of Apple's Software License Agreement.  Apple's claim – almost surely the largest against Psystar – will have to be liquidated at some time in this Chapter 11 case.  In addition, a determination

---

[4] The Debtor may contend that the continued expense of litigation counsel constitutes irreparable injury sufficient to justify continuation of the stay.  The applicable law, however, establishes that litigation expenses do not constitute irreparable injury.  *Peterson v. Cundy*, 116 B.R. 247, 250 (D.Colo. 1990) (prospect of litigation expenses not enough to prevent lift of stay); *see also In re Santa Clara County Fair Ass'n, Inc.*, 180 BR 564, 566 (B.A.P. 9th Cir. 1995) (fact that defense costs might dissipate the estate alone does not compel a court to deny relief from automatic stay to pursue litigation); *Davis v. Sheldon* (*In re Davis*), 691 F.2d 176, 178 (3d Cir. 1982) (the cost, anxiety, and inconvenience of defending oneself do not constitute irreparable injury); *In re McGraw*, 18 Bankr. 140, 142 (W.D. Wis. 1982) (even though debtor had no malpractice insurance, cost of defense is an insufficient prejudice); *In re Harris*, 85 Bankr. 858, 860 (Bankr. D. Colo. 1988) (noting that no court has found that litigation costs alone justify continuation of the stay); *In re Nkongho*, 59 Bankr. 85, 86 (Bankr. D.N.J. 1986) (rejecting debtor's claim that litigation expenses precluded modification of stay); *In re Nicholas, Inc.*, 55 Bankr. 212, 217-18 (Bankr. D. N.J. 1985) (same); *Barlow v. Phillips (In re Phillips)*, 40 Bankr. 194, 197 (Bankr. D. Colo. 1984) (same).

- 12 -

will have to be made regarding the propriety of the Debtor's post-petition conduct.  Without these determinations, the value of Apple's claim (and indeed, the value of all creditors' claims), the value of Apple's administrative expense claim for post-petition infringement and the viability of a Psystar reorganization "will remain a troubling issue" for all parties and this Court.  *Id.* at 859.

In contrast, Apple will be unduly prejudiced if the stay is not lifted.  Delay of the Infringement Action will permit Psystar to continue selling its infringing computer systems in violation of Apple's intellectual property rights with impunity, thus tarnishing the reputation of Apple's genuine products to Apple's obvious detriment.  *See In re SpaceCo Bus. Solutions, Inc.*, 2007 Bankr. LEXIS 4620, at *23, 86 U.S.P.Q.2d 1325 (Bankr. D. Colo. Oct. 18, 2007) (finding that balance of harms weighed in favor of lifting the stay because delay of pending patent infringement action would cause "irrevocable harm to [movant] through lost market share and sales revenues" generated by the allegedly infringing products); *In re Deep*, 279 B.R. 653, 659 (Bankr. N.D.N.Y. 2002) ("Thus, if the Debtors are actually committing copyright infringement, harm to the Movants, and even to the estate due to the potential administrative expenses that would also be accruing, would continue" if the automatic stay is not lifted).

This Court should not allow Psystar to use the automatic stay to insulate its continued, unlawful sale of products that infringe Apple's intellectual property rights.  Absent relief from stay, the Debtor's infringement, the harm to Apple, and the detriment to the estate due to accruing administrative expense will continue unabated.  The stay should therefore be lifted to allow Apple to proceed to trial in the District Court.

- 13 -

2.      Lifting The Stay Will Facilitate These Bankruptcy Proceedings

Not only will the Debtor *not* be unduly prejudiced if this Court allows the Infringement Action to proceed as planned, the Debtor's estate will actually *benefit*, as prompt resolution of its dispute with Apple is essential to determining whether it can exit bankruptcy with a confirmable reorganization plan.  As noted above, this is because the Infringement Action challenges the heart of Psystar's business model:  the manufacturing, marketing and sale of unauthorized, non-Apple computers running Apple's Mac OS X Leopard operating system without Apple's permission.  *See SpaceCo*, 2007 Bankr. LEXIS 4620, at *29 (granting motion for relief from stay to allow pending patent infringement action to proceed and noting that the allegedly infringing products "may not even be assets of the estate if the Pennsylvania Court determines that the Debtor has been infringing on Innovative's patents.").  Thus, lifting the automatic stay to permit the Infringement Action to proceed as planned will actually *facilitate* orderly proceedings in this Court.  *SCO Group*, 395 B.R. at 859 ("the Debtors simply cannot file a confirmable plan of reorganization until they know what liability they have to Novell.  The resolution of the issues remaining in the District Court litigation will assist the Debtors, not burden them.");  *In re Abrass*, 268 B.R. 665, 688 (Bankr. M.D. Fla. 2001) (granting creditor's motion for relief from stay to file a complaint against the debtor, a real estate broker, with state agency; complaint to state agency could result in the broker's license being revoked and would have drastic effect on viability of the debtor's Chapter 13 plan).

While the granting of the motion for relief may result in the Debtor being enjoined from infringing Apple's intellectual property, that is not a cognizable harm.  Debtor has no recognizable interest in having its violation of the copyright and trademark laws protected from an injunction, nor does it have any legitimate property rights in infringing products.  The

- 14 -

issue of infringement will need to be adjudicated in a federal court, and Judge Alsup in the Infringement Action can most efficiently and effectively adjudicate those claims.  While Section 362 of the Bankruptcy Code protects the property of the estate, it is not intended to allow the Debtor to commit post-petition wrongs with that property.

In sum, there is no reason to conclude that Psystar will suffer *any* prejudice if the automatic stay is lifted, whereas if the stay is not lifted, Apple will suffer prejudice and delay in the vindication of its rights, and thus compromise its ability to protect its intellectual property. Accordingly, the Motion should be granted.

### 3.    Apple Has Demonstrated A Reasonable Probability Of Success

Another factor that persuaded the *SCO Group* court to grant relief from stay was that Novell had demonstrated a reasonable probability of success on the merits.  *SCO Group*, 395 B.R. at 859 (noting that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").  Here, Apple has, at minimum, a reasonable probability of success on the merits given that Psystar has sold computers called "OpenMac" (and continues to sell similar computers under different names) that admittedly run an unauthorized version of Apple's Mac OS X Leopard operating system.  Discovery to date in the Infringement Action also establishes that Apple has a reasonable probability of success. Indeed, Psystar, by its own admission, is not authorized to sell non-Apple computers running Mac OS X Leopard and yet continues to do so.  Lastly, Psystar's primary defenses against Apple's claims – its original antitrust counterclaims – have already been rejected by the District Court.

B.     Allowing The Infringement Action To Proceed As Planned Will Conserve
Judicial Resources And Allow The Complex And Technical Infringement Issues
To Be Tried In An Experienced And Familiar Forum That Has Already Managed
The Litigation For Almost One Year

Lifting the automatic stay to allow the Infringement Action to proceed will also better serve the interest in judicial economy, a factor highly relevant to deciding whether an automatic stay should be lifted.  In *Deep*, *supra*, the debtors initiated declaratory relief actions against some of the movants, seeking a determination that Aimster/Madster, an online service, was not an "infringing system."  279 B.R. at 655.  Subsequently, the movants filed a copyright infringement suit against the debtors in a different district court.  A Multidistrict Litigation Panel consolidated all actions in the Northern District of Illinois (the "MDL Court").  After consolidation, the debtors filed a petition for bankruptcy, and movants sought relief from the automatic stay so that the consolidated actions could proceed.

The bankruptcy court *lifted the stay* to allow the preliminary injunction motion pending in the MDL Court to be decided.  *Id.* at 660.  Allowing the MDL Court to resolve the pending motion "would serve the interests of judicial economy and expedite the resolution of key litigation between the Debtors and Movants."  *Id.* at 658.  This was true even though the record suggested that the MDL Court would require a post-stay evidentiary hearing.  *Id.* at 658-59.  The bankruptcy court also found that the balance of harms weighed in favor of lifting the stay because

> if [the Movants] needed to proceed with a preliminary injunction
> request in this court to stop the alleged infringements, the vehicle
> for obtaining that would be an adversary proceeding pursuant to
> Fed. R. Bankr. P. 17.  That has not been commenced yet.  Thus, if
> the Debtors are actually committing copyright infringement, harm
> to the Movants, and even to the estate due to the potential
> administrative expenses that would also be accruing, would
> continue.  **Since the Debtors can only use property of the estate
> in a lawful manner and they agree that the question of**

- 16 -

> **copyright infringement must be resolved by some court, potential harm to the Debtors does not weigh as heavily.**

*Id.* at 659 (emphasis added).

The situation here is similar to the situation in *Deep*. An action by Apple in the bankruptcy court would be limited to post-petition infringement, and because that action is not yet commenced, it would necessarily plow the same ground that the District Court action has already plowed for almost a year. It is simply more economical and efficient at this point in the proceedings for Judge Alsup to adjudicate this matter. The Infringement Action has progressed to a point that to now make the parties retrace their efforts in this Court would cause needless delay, waste judicial resources and create the possibility of inconsistent decisions, all of which Apple wishes to avoid. *See In re Ice Cream Liquidation, Inc*., 281 B.R. 154, 167 (Bankr. D.Conn. 2002) (court that is "more advanced on the 'learning curve'" should be permitted to litigate matter outside of bankruptcy). Meanwhile, administrative expenses resulting from the post-petition infringement would continue to accrue. Because "the question of copyright infringement must be resolved by some court," the Infringement Action should proceed in the District Court, where considerable progress has already occurred. *Deep*, 279 B.R. at 659.

In addition, copyright and trademark infringement suits such as the Infringement Action often require a court to delve into highly technical and sometimes esoteric factual and legal issues surrounding computer software and hardware. The District Court holds significant experience in deciding some of the country's most sophisticated intellectual property cases. After ten months of litigation, Judge Alsup is readily familiar with the contested issues. *Id.* at 658 (citing original forum's familiarity with issues as reason for lifting automatic stay); *see also SCO Group*, 395 B.R. at 860 ("It is undeniable that the Lawsuit involves many highly technical issues that the District Court has already addressed and mastered."). Otherwise, maintenance of

- 17 -

the stay – which will in all likelihood force the parties to litigate the copyright issues in bankruptcy court – would waste judicial resources and cause unnecessary delay in resolving an issue key to determining whether Psystar can properly emerge from bankruptcy.[5]  *See In re Loudon*, 284 B.R. 106 (B.A.P. 8th Cir. 2002) (bankruptcy court did not abuse its discretion in granting relief from stay to allow state action alleging common law trademark infringement to proceed to judgment); *In re G.S. Distrib., Inc*., 331 B.R. 552 (Bankr. S.D.N.Y. 2005) (granting motion to lift automatic stay to allow trademark infringement action to proceed in district court, citing, among other reasons, the district court's expertise and familiarity with the issues). Obviously, it would be far more efficient to have these post-petition issues, which are identical to those that have been litigated over the past year before the District Court, heard in that forum contemporaneously with both parties' pre-petition claims.

> C.    The Relevant Factors From The *Beane* 12-Factor Test Weigh In Favor Of Lifting The Stay

The balancing test tips overwhelmingly in favor of granting Apple relief from stay.  An analysis of the twelve *Beane* factors only confirms this result.  Indeed, each of the factors relevant[6] to the current situation (Factors 1, 2, 4, 7, 10, 11 and 12) weighs heavily in favor of granting the Motion.[7]

---

[5] Although *Deep* involved only a lift of stay so that a preliminary injunction motion could be heard, not a trial on the merits, there is no reason here not to allow the Infringement Action to proceed to full judgment on both equitable and legal liability.  If it is determined that Psystar has infringed Apple's copyright – the chief issue in the case – then the calculation of damages will be relatively straightforward.  In any event, by this motion Apple only seeks the opportunity to liquidate its claim; Apple does not seek to actually collect damages other than through the claims process approved by this Court.

[6] Courts applying these factors agree that not all of the factors will be implicated in every case.  *See Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 143 (2d Cir. 1999); *In re Enron Corp*., 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004).

[7] Factors 3, 5, 6, 8 and 9 are inapplicable in that the Infringement Action does not allege that Psystar is a fiduciary, does not involve primarily third parties, and there is no evidence that Psystar's insurer has assumed full responsibility for defending it.  Nor is there reason to think that a judgment claim arising from the Infringement

(continued...)

- 18 -

### Factor 1:  Whether Relief Would Result In Partial Or Complete Resolution Of Issues

The first factor involves whether relief would result in the complete resolution of the issues to be adjudicated.  Here, a decision in the Infringement Action will completely resolve whether Psystar's conduct infringes Apple's intellectual property rights, Apple's entitlement to an injunction prohibiting such conduct, and the liability of the Debtor for all such infringement. This factor weighs in favor of granting relief from stay.  No other parties need be joined to fully resolve the issue.

### Factor 2:  Connection Or Interference With Bankruptcy Case

The second factor examines potential interference between the non-bankruptcy action and the bankruptcy case.  The Infringement Action will not interfere with the bankruptcy case; instead, as explained above, it will determine the amount of Apple's claim, determine Apple's entitlement to injunctive relief, and facilitate the determination of whether a confirmable reorganization plan for the Debtor is possible.

### Factor 4:  Specialized Tribunal With Necessary Expertise

The fourth factor weighs any specialized experience possessed by the non-bankruptcy court.  While the federal district court is not a specialized tribunal as such, a federal district court hearing a copyright and trademark infringement and DMCA case is comparable to a specialized tribunal.  Copyright, trademark and DMCA cases tend to be highly specialized areas of federal law.  The federal courts have exclusive jurisdiction over copyright infringement cases

---

(...continued)

Action would be subject to equitable subordination, nor that Apple's success would result in a judicial lien avoidable by Psystar.

LEGAL_US_W # 61919445.3
2147079-1

and cases alleging violations of the DMCA,[8] and these cases are typically heard by the federal district courts where they are a routine part of the docket of a federal district court judge, especially in the Northern District of California.[9]  In addition to the specialized knowledge of copyright and trademark cases possessed by the federal court, Judge Alsup has gained specialized knowledge of the subject matter and technology involved in the Infringement Action and has ample experience presiding over these types of cases.  Finally, even without the existence of a specialized tribunal, bankruptcy courts have deferred to other courts' specialized knowledge, recognizing that a more experienced forum is better equipped to address certain issues.  *See, e.g.*, *Universal Life Church, Inc. v. IRS (In re Universal Life Church, Inc.),* 127 B.R. 453, 455 (E.D. Cal. 1991) (bankruptcy court properly modified automatic stay in deference to Tax Court), *aff'd*, 965 F.2d 777 (9th Cir. 1992)*; Lewis v. Wells (In re Bob Lee Beauty Supply Co.),* 56 B.R. 17, 20 (Bankr. N.D. Ala. 1985) (deferring to state court's expertise in probate); *Eastern Consol. Util., Inc. v. Commonwealth (In re Eastern Consol. Utils., Inc.)*, 17 B.R. 809, 811 (Bankr. E.D. Pa. 1982) (deferring to administrative panel with special expertise in contract law).

**Factor 7:    Whether Litigation In Another Forum Would Prejudice Other Creditors**

The seventh factor addresses whether creditors would be prejudiced by continuation of the non-bankruptcy litigation.  Here, no prejudice to other parties in interest exists.  Permitting the Infringement Action to proceed will not prejudice the Debtor's creditors

---

[8] See 28 U.S.C. § 1338.

[9] For example, a Court Link search performed on June 2, 2009 of cases assigned to Judge Alsup that involve(d) copyright, trademark or DMCA issues indicates that Judge Alsup has been assigned at least 169 such cases.  (*See* Boroumand Smith Declaration, ¶ 7.)

- 20 -

since resolution of the issues before Judge Alsup must be addressed and damages, if any, fixed so that the extent of Apple's claims are known. *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.* (*In re Mid-Atlantic Handling Sys., LLC*), 304 B.R. 111, 130-31 (Bankr. D. N.J. 2003). The Debtor cannot pursue reorganization of its business affairs based upon the sale of products that violate applicable non-bankruptcy law. The Debtor has no legitimate property rights in an infringing product, and the Debtor may only use property of the estate in a lawful manner. *Deep*, 279 B.R. at 659. As a result, the infringement issues must be resolved by a court – either in California or Florida. Moreover, the relief from stay is limited to Apple procuring a judgment and injunctive relief against the Debtor. Apple will not levy against the Debtor's estate without further order of this Court.

### Factor 10:  Judicial Economy And Expeditious Resolution Of Litigation

This factor evaluates issues of judicial economy. As discussed in more detail above, allowing the Infringement Action to proceed before the district judge already familiar with the issues after ten months of litigation would hasten the resolution of the claims. Moving the litigation to this forum, on the other hand, would require the parties (and this Court) to start anew, thereby wasting the significant resources already expended as well as this Court's time.

### Factor 11:  Whether Parties Are Ready For Trial In The Other Proceeding

This factor focuses on the procedural status of the alternate proceeding. As discussed in more detail above, after extensive motion practice to refine the pleadings to their current state, the parties are only a few weeks away from completing discovery (indeed, by the time this motion is heard, discovery was scheduled to have been completed), and only a few months remain until the November trial date.

### Factor 12:  Impact Of The Stay On The Parties And The Balance Of Harms

This factor was discussed in extensive detail in Section V.A.1, *supra*, and weighs heavily in favor of granting relief from stay.

VI.    <u>CONCLUSION</u>

Apple's claims for infringement by the Debtor and redress for the continuing and existing harm caused by the infringing conduct must be decided either in the Northern District of California or before the Bankruptcy Court in Florida.  Allowing the parties' claims to be prosecuted in the pre-existing Infringement Action will best serve the interest of judicial economy and expedite the resolution of the dispute.

For all of the foregoing reasons, Apple respectfully requests that this Court grant the present motion, find that cause exists under 11 U.S.C. § 362(d)(1) to modify the automatic stay imposed by these bankruptcy proceedings, and enter an order permitting the Infringement Action to proceed on its current schedule through judgment.

LEGAL_US_W # 61919445.3
2147079-1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing, **MOTION BY APPLE INC. FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)**, was served electronically via the Court's CM/ECF system upon the parties who are currently on the list to receive e-mail notice/service for this case on this 5th day of June, 2009.

Dated:  June 5, 2009                    Respectfully Submitted,

                                        BERGER SINGERMAN, P.A.
                                        Co- Counsel for Apple Inc.
                                        200 S. Biscayne Boulevard, Suite 1000
                                        Miami, FL 33131
                                        Telephone:  (305) 755-9500
                                        Facsimile:  (305) 714-4340

                                        By:   _/s/  Paul Steven Singerman_____
                                                Paul Steven Singerman
                                                Florida Bar No. 378860
                                                singerman@bergersingerman.com

                                        and

                                        Thomas A. Counts (CA 148051) (Pro hac vice
                                        admission pending)
                                        Richard Chesley (IL 0624066) (Pro hac vice
                                        admission pending)
                                        PAUL, HASTINGS, JANOFSKY & WALKER,
                                        LLP
                                        Attorneys for Apple Inc.
                                        55 Second Street, 24th Floor
                                        San Francisco, CA  94105
                                        Telephone:  (415) 856-7000
                                        Facsimile:  (415) 856-7100
                                        thomascounts@paulhastings.com
                                        richardchesley@paulhastings.com

**<u>EXHIBIT 1</u>**
**Declaration of Mehrnaz Boroumand Smith**

LEGAL_US_W # 61919445.3
2147079-1